UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VARRELL MITCHELL, SR.,

                               Petitioner,

      vs.

                                      9:05-CV-710

ISRAEL RIVERA,                         (GTS/GJD)
Superintendent of Coxsackie[1] Correctional Facility
                               Respondent.

_____

VARRELL MITCHELL, SR., Petitioner *Pro Se*
ASHLYN H. DANNELLY, Assistant Attorney General for Respondent

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the

Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

      Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, alleging an unconstitutional delay in the direct appeal of his judgment of

conviction in Albany County Court.[2]  In June 2003, a jury convicted petitioner of

Second Degree Assault, First Degree Reckless Endangerment, and Endangering the

---

[1]During the pendency of this case, petitioner was transferred to Livingston Correctional Facility.  (Dkt. No. 17)

[2]Petitioner states that the court that entered the judgment is "Albany County Supreme Court."  This court does not have the state court records in this case, and relies on respondent's statement that this case was tried in Albany County Court.  (*See* Dkt. No. 15, Memorandum of Law ("Memo.")).

Welfare of a Child.  On August 14, 2003, petitioner was sentenced to an indeterminate term of incarceration of nine and one-half to ten and one-half years.[3]  On August 18, 2003, petitioner's counsel filed a notice of appeal with the Appellate Division, Third Department.  The parties disagree as to whether petitioner has perfected his appeal in the Third Department.

Petitioner filed the original habeas petition on June 7, 2005, and an amended petition was filed on December 17, 2007.  (Dkt. No. 1).  Petitioner raises four claims in support of his petition.

1.  Petitioner's right to a speedy appeal of his state court conviction has been denied because of delays in the delivery of trial transcripts and his "entire criminal file," necessary to perfect his appeal.  (Dkt. No. 1, ¶ 12(A)).

2.  Appellee in petitioner's direct appeal "failed to file a timely objection and stipulation to appendix filed 11-2-05."  (Dkt. No. 22, ¶ 10(A))[4].

3.  Appellee in petitioner's direct appeal "failed to respond to two briefs on three occasions in violation of the law."  (Dkt. No. 22, ¶ 10(B)).

---

[3]Petitioner states in his petition that his sentence is a determinate term of incarceration of fourteen years.  (Dkt. No. 1, ¶ 3).  However, the Department of Correctional Services website confirms that plaintiff is serving a sentence of nine and one-half to ten and one-half years.

[4]While this petition was pending, petitioner filed an "Application for Leave to File a Second or Successive Habeas Corpus Petition . . . By a Prisoner in State Custody" in the United States Court of Appeals for the Second Circuit on May 14, 2007.  (*See* Dkt. No. 22).  On June 13, 2007, the Second Circuit denied petitioner's application as "unnecessary" since this petition had not yet been decided.  (Dkt. No. 21).  The Second Circuit also instructed this court to treat petitioner's Second Circuit application as a motion to amend the original petition.  (Dkt. No. 21).  Petitioner's Application to the Second Circuit was then docketed as a motion to amend the petition in the Northern District of New York.  (Dkt. No. 22).  Respondent did not oppose the motion to amend.  (Dkt. No. 23).  This court granted the motion to amend on December 17, 2007.  (Dkt. No. 25).  Claims 2-4 were included in petitioner's application to the Second Circuit, and added to the petition on December 17, 2007.

4.  "Respondents have wilfuly [sic] frustrated petitioner's right to take an appeal, and his constitutional right to a speedy appeal that the actions [sic] and inactions of respondents caused petitioner prejudice and violated petitioner's rights to meaningful access to the court, due process and equal protection of law."  (Dkt. No. 22, ¶ 10(C)).

Respondent has filed an answer with a memorandum of law, and a limited number of State Court Records relating to petitioner's incomplete appeal.  (Dkt. Nos. 15, 26).  For the following reasons, this court will recommend that the petition be denied and dismissed.

## DISCUSSION

1.  <u>Facts</u>

Petitioner has included a great deal of information regarding the facts and circumstances of his arrest and conviction in Albany County Court.  Petitioner represented himself at trial.  (Dkt. No. 1, ¶ 15).  The habeas petition includes claims ***only*** regarding petitioner's direct appeal in the state courts, thus, it is unnecessary for the court to discuss the facts of petitioner's crime in this Report-Recommendation.[5] The underlying conviction is for crimes related to injuries to one of petitioner's children.

At some point after his sentencing on August 14, 2003, petitioner wrote to the Appellate Division, Third Department and requested permission to file a late notice

---

[5]Petitioner makes a number of allegations regarding matters that occurred prior to his trial and during his trial.  Petitioner may be attempting to raise those allegations in this court in an effort to argue the merits of his state court appeal.  The court does not interpret the petition as raising any claims other than those relating to appeal delay.

of appeal.  On October 3, 2003, the Third Department responded that the notice of appeal had already been timely filed, and marked petitioner's request "withdrawn." (Petitioner's Exhibits[6] ("Pet. Ex."), 26).  The Third Department also included instructions to the petitioner on how to file an "Application for Poor Person status," and informed him how attorneys were assigned for appeals. (Pet. Ex. at 26).

Petitioner was granted permission by the Third Department to proceed as a poor person on January 8, 2004. (Pet. Ex. at 30).  Also on January 8, 2004, the Appellate Division assigned the Albany County Public Defender's Office[7] to handle petitioner's appeal. (Pet. Ex. at 28).  In its January 8, 2004 letter to petitioner's appellate attorney, the Third Department included instructions on how to obtain a free copy of the transcripts.  *Id*.

On March 11, 2004, petitioner wrote a letter to an Assistant Deputy Clerk of the Third Department to complain that petitioner's assigned attorney had not yet contacted him. (Pet. Ex. at 31-32).  Petitioner stated "I've been trying to communicate with Mr. Devine ever since November of 2003."  (Pet. Ex. at 31).  On

---

[6]In addition to his petition (to which he attached an additional 27 pages of "Procedural History and Background") and a 35 page Memorandum of Law, petitioner submitted 104 pages of exhibits, all filed at Docket Number One.  Petitioner assigned each of the exhibits a letter (A-Z) or a number (1-6), but did not individually paginate each exhibit.  Instead, petitioner sequentially numbered the 104 pages.  The court will use petitioner's sequential pagination when it refers to petitioner's exhibits.

[7]The Third Department originally wrote to the Albany County Public Defender on October 27, 2003 to determine whether that office had any conflicts that would prevent it from representing petitioner in the direct appeal.

March 26, 2004, Assistant Deputy Clerk Fritts replied that "I would point out that Mr. Devine's office was only assigned to your matter slightly more than two months ago and normally it takes at least that amount of time (and most often more) just to obtain the transcripts and papers relative to an appeal."  (Pet. Ex. at 33).

On May 6, 2004, petitioner wrote to Justice Cardona of the Third Department. (Pet. Ex. at 34-35).  Petitioner stated that while the letter was not a "formal complaint," he wished to have his counsel removed because counsel was "deliberately depriving me of an opportunity to perfect my appeal by ignoring my letters and refusing to correspond with me . . . ."  (Pet. Ex. at 34).  Petitioner complained that "I don't even know if my brief was submitted without me," and worried that his attorney might have missed the deadline for the brief or failed to ask for an extension of the deadline. *Id*.

On June 1, 2004, petitioner wrote to the Third Department's Committee on Professional Standards and to New York Court of Appeals Chief Judge Judith Kaye. (Pet. Ex. at 36-37).  Petitioner stated that he had not yet been contacted by his appellate counsel, despite the fact that petitioner had attempted to contact counsel repeatedly. *Id*.  Petitioner also expressed concern about whether or not his counsel had met the Third Department's deadlines. *Id*. at 36.  Petitioner stated, "I want this guy removed as my appeals lawyer." *Id*. at 37.

On June 2, 2004, an Assistant Deputy Clerk for the Third Department wrote to

petitioner. (Pet. Ex. at 38).  The clerk stated that he had met with petitioner's counsel, and "I have his assurances that you will hear from his office in the very near future." *Id*.  The clerk also stated, "I wish to stress to you that the appeal process is a complicated and often long procedure and you are well advised to leave same to an attorney." *Id*.  However, the clerk stated, if petitioner wished to proceed *pro se*, petitioner should advise the court.  *Id*.

On June 9, 2004, an attorney from the Albany County Public Defender's Office, Ms. Suozzi, wrote to petitioner. (Pet. Ex. at 39-40).  Attorney Suozzi asked petitioner to send her a written explanation of relevant facts and issues and to notify the Public Defender's office if petitioner were moved to another facility. (Pet. Ex. at 39).  On June 10, 2004, petitioner made a motion in the Third Department. (Pet. Ex. at 57-60).  Petitioner requested permission to file a *pro se* supplemental brief; an extension of time to perfect the appeal; and a copy of the transcripts. (Pet. Ex. at 57).  Petitioner stated that he was prompted to file the motion because he was being ignored by his counsel. (Pet. Ex. at 58).

On June 14, 2004, the Committee on Professional Standards wrote to petitioner. (Pet. Ex. at 61).  The letter stated that petitioner's allegations would be investigated. *Id*.  On June 24, 2004, petitioner responded to Public Defender Ms. Suozzi's June 9, 2004 letter with a fourteen page letter.  (Pet. Ex. at 41-54).  Petitioner stated that "[i]t's okay for you to do my appeal 'if' you have my best

6

interest at heart . . .".  (Pet. Ex. at 41).  Petitioner also listed five claims that he

believed should be raised on appeal. (Pet. Ex. at 43-53).  On August 24, 2004, Public

Defender Suozzi's office sent petitioner a copy of a motion to the Appellate Division

requesting an extension of time to perfect the appeal.  (Pet. Ex. at 62-67).

 Petitioner apparently wrote a letter to the Appellate Division dated August 26,

2004.  The court does not have petitioner's letter, however, on September 7, 2004, an

Appellate Division clerk wrote a letter responding to petitioner's August 26, 2004

letter.  (Pet. Ex. at 68).  The clerk indicated that he was "somewhat uncertain" as to

petitoner's wishes.  *Id*.  The clerk stated that permission to proceed *pro se*, and

permission to file a supplemental *pro se* brief were two completely different things.

*Id*.  The clerk asked for more information regarding petitioner's request.  *Id*.

 On October 6, 2004, a Third Department clerk wrote to petitioner,[8]

acknowledging petitioner's request to proceed *pro se* in the appeal. (Pet. Ex. at 70).

The clerk explained that he scheduled petitioner's *pro se* application for

consideration by the court in October 2004.  *Id*.  On October 19, 2004, the Third

Department granted petitioner's request to proceed *pro se*.  (Pet. Ex. at 73).  The

clerk wrote to petitioner that the Public Defender had been relieved as his counsel,

and that petitioner was granted permission to proceed *pro se*. (Pet. Ex. at 71-72).

The clerk also explained how to obtain the transcripts necessary to perfect the appeal.

---

 [8] Once again, the court does not have any letter that petitioner may have written to the
court, but is relying upon the letters from the Appellate Division.

(Pet. Ex. at 71).

On October 25, 2004, the petitioner wrote to the Albany County Public

Defender.  (Pet. Ex. at 74).  Petitioner requested that all documents and transcripts

associated with his case be forwarded to him.  *Id*.  On November 30, 2004, petitioner

wrote a letter to the Public Defender's Office requesting his "criminal file."  (Pet. Ex.

at 88).

Petitioner submitted requests to the Deputy Chief Clerk for Albany County for

a copy of the trial transcripts on October 27, 2004 (Pet. Ex. at 75-76) and November

30, 2004.  (Pet. Ex. at 87).  On December 6, 2004, the Deputy Chief Clerk of the

Albany County Court wrote to petitioner and stated that the transcripts had not yet

been filed, but that they had been ordered.  (Pet. Ex. at 89).  The clerk also stated that

any papers "in the file" would be provided to petitioner's attorney.  *Id*.  The clerk

stated that grand jury minutes, police records, and forms were not on file with her

office. *Id*.

On several occasions during this process, an Assistant Deputy Clerk from the

Third Department wrote to the Administrative Judge in the Third Judicial District to

assist petitioner in obtaining the trial transcripts.  The first letter was dated

November 18, 2004. (Pet. Ex. at 81).  This court does not have a copy of the second

or third requests from the Third Department Assistant Deputy Clerk.  However, the

respondent quotes the third request, dated April 26, 2005[9]. (Dkt. No. 15, Memo. at 7). The quotation that respondent uses refers to the fact that it was "the third letter to request this transcript." *Id*.

On December 1, 2004, petitioner wrote a letter to Administrative Judge Ceresia complaining about the delays in receipt of the transcripts. (Pet. Ex. at 83-86). Petitioner attached copies of his correspondence with his former attorney and with the Albany County Court. *Id*. On December 22, 2004, an individual from Justice Ceresia's office responded to petitioner's December 1, 2004 letter stating that a backlog of transcription requests existed, but that the court reporter was attempting to alleviate the backlog. *Id*. (Pet. Ex. at 94). The letter also stated that Justice Ceresia "cannot direct your attorney to turn over documents to you." *Id*.

Petitioner was granted many extensions of time to perfect his appeal, and it appears that this court does not have documentation of all of petitioner's requests or the Third Department orders related to the extensions. Petitioner requested extensions of time until November 15, 2004 (Pet. Ex. at 69, granted September 14, 2004), and January 31, 2005 (Pet. Ex. at 77-80). In his request for the January 31, 2005 extension, petitioner stated that the pretrial hearing and trial minutes had not

---

[9]Respondent cites to Exhibit 287 for this request from the Appellate Division to the trial court. According to Footnote Two in respondent's brief, this citation refers the reader to the exhibits that petitioner attached to his petition. (Dkt. No. 15, Memo. at 3). The court's copy of petitioner's exhibits includes pages 1 through 104. The court has been unable to locate the document to which respondent is referring. It is unclear whether this citation is an error, or if there are additional documents that were not submitted to this court.

yet been prepared and that "no date has been articulated . . . [as to] when they will be prepared." (Pet. Ex. at 78-79). On July 26, 2005, the Third Department extended petitioner's deadline to September 26, 2005. (Dkt. No. 9, 3). Petitioner referred to this extension as "an unprecedented 'fifth' extension." (Dkt. No. 9, 1). On September 12, 2005, petitioner advised this court that he asked the Third Department for a "world record" sixth extension of time to perfect the appeal to October 30, 2005. (Dkt. No. 10, 1). The Third Department granted another extension of time to perfect the appeal until December 5, 2005. (Dkt. No. 14, 2).

On January 4, 2005, petitioner filed a Motion to Dismiss the Indictment in the Third Department. (State Court Records[10] ("SCR"), Ex. A). Plaintiff stated that the basis for his motion was the delay in obtaining the transcripts, and the resulting inability to perfect his appeal. (SCR, Ex. A at 1-3). The People opposed the motion (SCR, Ex. B), and the Third Department denied the motion on February 18, 2005. (SCR, Ex. C at 24). Petitioner sought leave to appeal to the New York State Court of Appeals on March 10, 2005. (SCR, Ex. C). The Court of Appeals dismissed petitioner's request on March 31, 2005. *People v. Mitchell*, 4 N.Y.3d 833, 829 N.E.2d 681 (2005).

It appears that during the pendency of petitioner's motion to dismiss the indictment in the Appellate Division, petitioner's former appellate counsel sent

---

[10]The court paginated each of the three State Court Record exhibits in the absence of pagination by respondent.

petitioner some documents and transcripts from his case. (SCR, Ex. C at 23).  The

documents were sent to petitioner on February 1, 2005, and included the indictment,

omnibus motion, motion to suppress, and transcripts of pre-trial hearings and the

sentencing.  *Id*.  The covering letter stated that the office had no other documents

related to petitioner's appeal.  *Id*.

On September 28, 2005, petitioner's former appellate counsel forwarded the

trial transcripts to petitioner.  (Dkt. No. 14 at 1).  According to respondent,

> [o]n November 17, 2005, petitioner attempted to file with the Appellate
> Division a 998-page record on appeal and a brief.  However, the court
> rejected the record because petitioner only included portions of the
> record, and it was not ordered properly; his brief was rejected because
> he did not provide sufficient copies, and it was not numbered properly.
> On December 19 [2005], Associate Appellate Court Clerk Mark Leguire
> wrote petitioner and instructed him on how to properly file the record
> and brief.  As of today[11], he has not attempted to re-file the brief and
> record on appeal.

(Dkt. No. 15 Memo. at 8).  According to petitioner, he filed an appendix on

November 2, 2005.  (Dkt. No. 22 ¶ 10(A)).  Petitioner states that the "respondent" in

his state appeal failed to:  object or stipulate to the record; move the court for a

hearing to settle the record on appeal; or notify petitioner that the appendix was

inadequate within ten days as required by "the rules of the court."  *Id*.  Also

according to petitioner, he filed a brief on November 14, 2005, that was rejected by

the Appellate Division on December 19, 2005 "due to an inadequate appendix".

---

[11]Docket Number 15 was filed on December 22, 2005.

(Dkt. No. 22, ¶ 10(B)).  Petitioner states that he filed an amended brief on December 28, 2005 that was accepted for filing.  *Id*.  Petitioner states that the appellees failed to file a response to the brief and "missed the 2-6-07 deadline with no brief filed at all for some '17' months and counting."  *Id*.  In response, on January 16, 2008, respondent stated that petitioner had not yet perfected the appeal.  (Dkt. No. 26 at 1).

## 2.   **Right to a Speedy Appeal**

### *A.  The Standard*

All of petitioner's claims in one way or another allege that he has been denied his right to a speedy appeal.[12]  Although criminal defendants have no constitutional right to an appeal, where a state has instituted an appellate system, the procedures "must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."  *Evitts v. Lucey*, 469 U.S. 387, 393 (1985).  "[T]he right to a reasonably timely appeal is included among the protections afforded by the due process clause when a state does provide for an appeal."  *Cody*, 936 F.2d at 719.  See also *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990).  Petitioner alleges that his appeal has been unconstitutionally delayed by a judge, an Albany County Deputy Court Clerk, his former appellate attorney, and by the prosecutor.

---

[12]Petitioner argues in his *Memorandum of Law* that the habeas statute's exhaustion requirement should be excused in this case because the issue before this court, as alleged by petitioner, is the denial of his right to appeal.  Respondent does not oppose this portion of petitioner's argument.  The court need not address any exhaustion issues because the habeas corpus statute allows the court to deny a claim on the merits notwithstanding the failure to exhaust.  28 U.S.C. § 2254(b)(2).

The Second Circuit has held that the *Barker v. Wingo* factors should be considered when determining whether a delay of a prisoner's appeal violates due process. *Simmons*, 898 F.2d at 868; *Barker v. Wingo*, 407 U.S. 514 (1972). Under *Barker*, the court must consider four factors: (1) the length of the delay, (2) the reason for the delay, (3) the petitioner's assertion of his or her right to a speedy hearing of his or her appeal, and (4) prejudice to the petitioner. *Barker v. Wingo*, 407 U.S. at 530. Under *Simmons*, "no one factor is dispositive and all are to be considered together with the relevant circumstances." *Simmons*, 898 F.2d at 868.

Petitioner lists four separate claims. However, petitioner's first three claims specifically relate to the length of and reason for the delay, and are not truly separate claims. Petitioner's fourth claim is merely a restatement of petitioner's other claims. Therefore all of petitioner's claims will be considered together under the *Barker* analysis.

## B. *Barker Analysis*

### 1. Length of Delay

The first factor to be considered under the *Barker* analysis is the length of the delay. "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. The court must first consider how to calculate the length of the delay. The court notes

that the delay can be divided into two discrete time periods: the time period before petitioner's receipt of the transcripts, and the time period after petitioner's receipt of the transcripts.

At the time that this habeas petition was filed in June 2005, petitioner had not received his trial transcripts.  Petitioner claims that he endured a delay of **_twenty-one months_** from the filing of his notice of appeal in August 2003 until the filing of his federal petition in June 2005.  (Dkt. No. 1, Memo. at 46[13]).  As petitioner attempted to perfect his direct appeal in November 2005, the court will assume that petitioner did, in fact, receive the transcripts and documents that were sent to him by his former appellate counsel.  Therefore, there was a delay in the provision of the transcripts of approximately **_twenty-six months_** from the notice of appeal filed in August 2003 until petitioner received the transcripts in the beginning of October 2005.  Respondent states that petitioner received the complete transcripts **_fifteen months_** after petitioner's former appellate counsel's first request for the transcripts in June 2004[14].  (Dkt. No. 15, Memo. at 10).

---

[13]The court uses petitioner's numbering of his Memorandum of Law.  Petitioner's Memorandum of Law begins with Page 32.

[14]It is unclear from the record when petitioner's former appellate counsel first requested the transcripts.  On February 1, 2005, petitioner's former appellate counsel mailed some documents and transcripts from petitioner's case, but counsel had not yet received the trial transcripts .  (SCR, Ex. C at 23).  The trial transcripts were mailed to petitioner on September 28, 2005.  (Dkt. No. 14, 1).  The parties did not submit a copy of the June 2004 transcript request by petitioner's former appellate counsel, and the court relies on respondent's representation that counsel's first request for the transcripts occurred in June 2004.

Since petitioner received his transcripts sometime in early October 2005, the delay has been ongoing.  Petitioner first attempted to file his brief and perfect his appeal by filing an appendix in November 2005.  At this writing, approximately ***thirty-one months*** have elapsed since petitioner was provided with the necessary transcripts.

The court finds that, as a threshold matter, a substantial delay in petitioner's direct appeal has occurred.  Nearly six years have elapsed since the notice of appeal was filed, and petitioner's direct appeal still has not been perfected in the Appellate Division.  In this case, the length of the delay is clearly substantial enough to warrant inquiry into the remaining factors.  The court must consider the other *Barker* factors in order to assess the weight of this factor and responsibility for the lengthy delay.

### 2.  Reason for the Delay

Petitioner alleges that the delay in his receipt of the transcripts was due to the "deliberate conduct of a sitting judge, an Albany County Deputy Court Clerk, and, petitioner's former appellate attorney."  (Dkt. No. 1, 3).  The United States Supreme Court has held that "the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971).  In this case, there was considerable delay in the provision of the required transcripts.  The Third Department, in fact, intervened on behalf of petitioner and wrote directly to the

Administrative Judge for the District in an attempt to speed the transcription process. (Pet. Ex. at 81; Dkt. No. 15, Memo. at 7).

It is clear from the correspondence between the local court and the Appellate Division that the reason for the bulk of the delay was a backlog at the Albany County Court, despite petitioner's claims that "respondents have thrown a brick and is [sic] now trying to hide their hands."  (Dkt. No. 1 at 61).  Respondent states that the presence of a backlog is a "neutral" reason, and the result of an overcrowded court system.  In *Barker*, the Supreme Court stated that a deliberate attempt at delay would weigh heavily against the government.  The *Barker* court went on to state that "[a] more neutral reason [for the delay] such as negligence or overcrowded courts should be weighted less heavily [against the government] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  *Barker*, 407 U.S. at 531.

This is not a case where state actors deliberately delayed an appeal. Furthermore, once the transcripts were filed and mailed to petitioner's former attorney, petitioner received his copy within ***days***.  This factor weighs against the state because the stenographer's delay in transcribing petitioner's trial is attributable to the state.  However, the state's responsibility is somewhat mitigated by the Appellate Division's efforts to expedite the processing of the transcript.  *Cameron v. Lefevre*, 887 F. Supp. 425, 432 (E.D.N.Y. 1995).

16

The court notes that, as a matter of practice, trial transcripts are generally not immediately available at the conclusion of a trial.  It takes some time for the court reporter to finalize and certify the transcript.  Because of the many variables involved in providing a defendant with transcripts, this court cannot make a specific finding as to how long the state may have after a conviction and/or sentencing in order to finalize and provide the transcripts necessary for a defendant to take an appeal.  In this case, the first request for the transcripts was made approximately ten months after the notice of appeal was filed.  The court will not assess the ten months that elapsed prior to counsel's ***first request*** for the transcripts against the state.  Though the state could have provided the transcripts prior to any request being made, any delay that occurred on the part of counsel should not be assessed against the state.

However, once the request was made in June 2004[15], it took an additional fifteen months for petitioner to receive the transcripts.  The fifteen month delay after the first request (ten months after the notice of appeal was filed) is a factor fairly assessed against the state.  The length of the delay with respect to petitioner's receipt of the transcripts was considerable, but not excessive.  The Second Circuit has found some delays in a direct appeal excessive, and a violation of due process.  *See, e.g., Muwwakkil v. Hoke*, 968 F.2d 284, 285 (2d Cir. 1992) (thirteen year delay); *Elcock v. Henderson*, 947 F.2d 1004 (2d Cir. 1991) (eight and a half year delay); *Mathis v.*

---

[15]*See* n. 14, *supra.*

*Hood*, 937 F.2d 790 (2d Cir. 1991) (six year delay); *Cody*, 936 F.2d 715 (2d Cir. 1991) (ten year delay; transcripts not filed until five years after petitioner's original notice of appeal); *Diaz v. Henderson*, 905 F.2d 652 (2d Cir. 1990) (seven year delay); *Simmons*, 898 F.2d 865 (2d Cir. 1990) (six year delay).  In this case, the length of the transcript delay is much shorter than in cases where the Second Circuit has found a due process violation, and is not presumptively indicative of a due process violation.

With respect to the ongoing delay in petitioner's direct appeal since his receipt of the transcripts in October 2005, the reason for the delay is petitioner's inability to perfect his appeal.  Petitioner argues that he has been unable to perfect his appeal and settle the record on appeal because "the respondents[16] have failed to file a timely objection and stipulation to appendix filed 11-2-05."  (Dkt. No. 22, ¶ 10(A)).  Petitioner also argues that respondents "deliberately failed to respond to two briefs on three occasions in violation of the law."  (Dkt. No. 22, ¶ 10(B)).  Respondent states that

> On November 17, 2005, petitioner attempted to file with the Appellate Division a 998-page record on appeal and a brief.  However, the court rejected the record because petitioner only included portions of the record, and it was not ordered properly; his brief was rejected because he did not provide sufficient copies, and it was not numbered properly.

---

[16]Though petitioner refers to the "respondents," it is clear that petitioner is actually referring to the appellees in his direct appeal.  Petitioner is not arguing that the Superintendent of the correctional facility has somehow hindered petitioner's ability to appeal his conviction.

(Dkt. No. 15, *Mem*. at 8).  Respondent also argues that

> as explained by the District Attorney's office in their March 15, 2006
> letter to petitioner (attached to the motion to amend), they did not
> consent to petitioner's proposed appendix because it included records of
> court proceedings unrelated to the appeal.  And, respondent has verified
> with both the Appellate Division, Third Department, and with the
> District Attorney's office that, after the District Attorney rightfully
> refused to consent to an appendix containing documents not relevant to
> his appeal, petitioner has not taken any further action to perfect his
> appeal.

(Dkt. No. 26, *Supp. Mem.* at 3).

The court weighs the reason for the delay after petitioner received his transcript, against petitioner.  The court will excuse petitioner for the delay for the months of October and November 2005, after he received the transcripts, while petitioner prepared to file his brief.  However, since petitioner's attempt to perfect his appeal in November 2005, the responsibility for the delay rests squarely on petitioner.  Admittedly, the legal procedure that one must undertake to pursue an appeal of a conviction is a challenging one, and one usually pursued by attorneys.  Petitioner was informed of this quite clearly in a letter written to him by one of the Clerks in the Appellate Division.  Petitioner is well within his rights to pursue his direct appeal as a *pro se* party.  However, that does not excuse petitioner from having to follow the Appellate Division's procedure.[17]

Both Appellate Division personnel as well as the District Attorney's office

---

[17]The court also notes that petitioner's choice to proceed *pro se* certainly delayed his appeal after he received the transcripts.

have explained the procedure for "settling the record" by submitting an appropriate appendix. This is not a case where the Appellate Division has unduly delayed in rendering a decision, but rather, this is a case that is not yet ready for judgment. This court may not instruct the Appellate Division on the procedures required to properly bring a direct appeal. Although petitioner argues that the Appellate Division has not decided the appeal because the prosecutor has not responded to petitioner's brief, it is clear that there is no brief, properly filed. If the petitioner's appeal had been properly filed, and the prosecutor had simply failed to respond, this would not have prevented the Appellate Division from making a ruling. The fact that the Appellate Division has found it unnecessary to take any further action after petitioner's attempt to perfect the appeal and settle the record is indicative of the lack a properly perfected appeal. It is the appellant's responsibility to perfect the appeal and settle the record in any appeal.

In summary, with respect to the nearly six year delay in petitioner's appeal, the court has considered both the length and the reason for the delays. The court finds that the only period of delay that weighs in favor of petitioner and against respondent is the fifteen month delay after petitioner's counsel's first request for the transcripts in June 2004 and prior to the provision of the necessary transcripts in early October 2005. The court finds that the remainder of the lengthy delays weigh against the petitioner. As discussed above, a fifteen month delay is substantially less than in

cases where the Second Circuit has found a presumptive due process violation.

### 3.  Petitioner's Assertion of His Speedy Trial Right

With respect to the third *Barker* factor, petitioner repeatedly requested his transcripts and complained to officials at the trial court level and at the Appellate Division that his transcripts were delayed.  (Pet. Ex. at 75-76, 87, 83-86).  Petitioner obtained the assistance of the Third Department, and the Third Department contacted the District's Administrative Judge in an attempt to expedite the transcription process.  This factor weighs in favor of petitioner, but only as to the fifteen month transcript delay.

### 3.  Prejudice Against Petitioner

Petitioner states emphatically that he has suffered substantial prejudice because of the transcript delay.  Petitioner refers to "one of the most violent situations an inmate can experience" and his "fight to survive the paperwork here at the prison." (Dkt. No. 1 at 63).  Petitioner also states that he has a high level of anxiety.  *Id*.  However, petitioner has not alleged that ***his appeal*** has been prejudiced in any way by the fifteen month transcript delay.  As petitioner has now received his transcripts, the court cannot make a finding that petitioner has been prejudiced by this particular delay in his direct appeal.

With respect to petitioner's claim that the delay in his receipt of the transcripts was a constitutional violation of his due process right to a speedy appeal, the court

finds that the *Barker v. Wingo* factors weigh against petitioner, and that there has been no due process violation.  Petitioner's claims may be dismissed.

The court also notes the limitations of a habeas petition to remedy the possible violation of a petitioner's right to a speedy appeal.  The Supreme Court has held that the major function of the writ of habeas corpus is to obtain release from illegal custody.  *Preiser v. Rodriguez*, 411 U.S 475, 484-86 (1973).  Even in cases where the district court has found a constitutional violation of the right to a speedy appeal, the level of prejudice must "so taint the fairness of the state proceedings" as to deny the petitioner an adequate and effective appeal."  *Simmons*, 898 F.2d at 869.  The delay, without more, is not a sufficient basis for release from custody.  *Muwwakkil v. Hoke*, 968 F.2d 284 (2d Cir. 1992) (citations omitted).  "Rather, some showing of prejudice to the appeal is necessary for habeas relief."  *Muwwakkil*, 968 F.2d at 284 (quoting *Mathis v. Hood*, 937 F.2d 790, 794 (2d Cir. 1991)).  Under *Mathis*, the petitioner must show "a reasonable probability that, ***but for the delay, the result of the appeal would have been different***."  *Mathis*, 937 F.2d at 794 (emphasis added).

This case does not yet have a final disposition from the state courts.  Though this court has not found a constitutional violation in any of the delays that petitioner has alleged, the court notes that petitioner is unable to show that any delay in his appeal has caused the unjust outcome of his appeal.  Furthermore, petitioner has not claimed that the ***Appellate Division*** has unconstitutionally failed to reach a decision

on his appeal.  Petitioner alleges only that the appellees have not properly and/or timely responded to his briefs.  The court also notes that the "usual disposition of a meritorious habeas petition based on a delayed appeal is to grant an alternative writ that orders the state either to prosecute the appeal within a specified reasonable period of time, or to release the petitioner."  *Simmons*, 898 F.2d at 869 (citations omitted).  Since the appeal is not perfected, and the record is not yet settled, such a remedy is not applicable in this case.

      **WHEREFORE**, based on the findings above, it is

      **RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

      **RECOMMENDED**, that no certificate of appealability be issued.

      Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: June 5, 2009

                                        Hon. Gustave J. DiBianco
                                        U.S. Magistrate Judge